IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN D. GEBHARD AND ELENA GEBHARD, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:09-CV-03159-GEB-JFM |
| | ) | |
| v. | ) | ORDER GRANTING PLAINTIFFS' |
| | ) | MOTION TO REMAND[*] |
| BANK OF AMERICA, N.A.; CRESTLINE | ) | |
| FINANCIAL AND MARKETING SERVICE | ) | |
| CORPORATION, INC.; EDITHA GANTAN | ) | |
| SANTOS, AN INDIVIDUAL; AND DOES 1 | ) | |
| THROUGH 100, | ) | |
| | ) | |
| Defendants. | ) | |

On January 7, 2010, Plaintiffs filed a motion in which they seek to remand this case to the San Joaquin County Superior Court in California from which it was removed. (Docket No. 9.) Plaintiffs also request an award of the attorney's fees and costs incurred in connection with preparing and filing their remand motion. Defendant Bank of America, N.A. ("BofA") opposes Plaintiffs' motion, arguing federal question jurisdiction supports the removal of this case to federal court. For the reasons stated below, Plaintiffs' motion to remand is GRANTED.

---

[*] This matter is deemed to be suitable for decision without oral argument. E.D. Cal. R. 230(g).

# I.  BACKGROUND

On October 14, 2009, Plaintiffs filed a complaint in the San Joaquin County Superior Court, alleging fourteen claims under state law.  Specifically, Plaintiffs' complaint alleges claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, deceit, promissory estoppel, fraud by intentional misrepresentation, fraud by concealment, restitution for unjust enrichment, slander of title, civil conspiracy, declaratory relief, rescission/cancellation of void instrument, preliminary and permanent injunctive relief and violations of California Business and Professions Code § 17200 et seq. and California's Rosenthal Act.

Plaintiffs' claims relate to a mortgage loan transaction involving property located at 10617 Tank House Drive in Stockton, California.  (Compl. ¶ 2.)  On or about December 23, 2005, Plaintiffs entered into a mortgage loan agreement with Aegis Wholesale Lending, who later transferred the loan to Countrywide Home Loans.  (Id.)  BofA is allegedly the "corporate successor" to Countrywide Home Loans. (Id. ¶ 3.)

On October 13, 2009, BofA filed a notice of removal, removing this action to federal court on the basis of federal question jurisdiction.  (Notice of Removal ¶ 5.)  BofA's notice of removal states that removal is proper since Plaintiffs' claims "arise under" two federal statutes: the Truth in Lending Act and the Real Estate Settlement Procedures Act.[1]  (Id.)  After removal, on November 20, 2009, BofA filed a motion to dismiss Plaintiffs' complaint.

---

[1]    BofA's notice of removal cites to six paragraphs of Plaintiffs' complaint for support: ¶¶ 10, 53, 62, 68, 75 and 83.

1  Plaintiffs did not oppose BofA's dismissal motion; however, on January
2  7, 2010, they filed their now pending remand motion.

### II.   LEGAL STANDARDS

#### A.   Removal

5       A defendant may remove to federal court "any civil action
6  brought in a State court of which the district courts . . . have
7  original jurisdiction . . . ." 28 U.S.C. § 1441(a).  Removal,
8  therefore, is only proper when a case originally filed in state court
9  presents a federal question or is between citizens of different states
10  and involves an amount in controversy that exceeds $75,000.  See 28
11  U.S.C. §§ 1331, 1332(a).  "The removal statute is strictly construed
12  against removal jurisdiction [and] [t]he defendant bears the burden of
13  establishing that removal is proper." Provincial Gov't of Marinduque
14  v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009) (citations
15  omitted).  "Where doubt regarding the right to removal exists, a case
16  should be remanded to state court." Matheson v. Progressive Specialty
17  Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

#### B.   Federal Question Jurisdiction

19       BofA argues federal question jurisdiction supports its
20  removal of this action.  "The presence or absence of federal question
21  jurisdiction is governed by the 'well-pleaded complaint rule,' which
22  provides that federal jurisdiction exists only when a federal question
23  is presented on the face of the plaintiff's properly pleaded
24  complaint." California v. United States, 215 F.3d 1005, 1014 (9th
25  Cir. 2000) (quoting Audette v. Int'l Longshoremen's and Warehousemen's
26  Union, 195 F.3d 1107, 1111 (9th Cir. 1999)).  "Under that rule, [a
27  court] must look to what necessarily appears in the plaintiff's
28  statement of his or her own claim . . . , unaided by anything alleged

3

in anticipation of avoidance of defenses which is thought the defendant may interpose." Id. at 1014-15 (quoting Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 841 (1999)).  "In addition, the plaintiff is the 'master' of her case, and if she can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal." Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).

It is undisputed that the face of Plaintiffs' complaint does not allege a claim under federal law.  However, "[u]nder the artful pleading doctrine, a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.  The artful pleading doctrine allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by recharacterizing a plaintiff's state-law claim as a federal claim." Lippit v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041 (9th Cir. 2003).  The artful pleading doctrine applies to "(1) complete preemption cases, and (2) substantial federal question cases.  Subsumed within this second category are those cases where the claim is necessarily federal in character or where the right to relief depends on the resolution of a substantial, disputed federal question." Id. (citations omitted).

A state law cause of action "arises under" federal law and confers federal question jurisdiction when it "necessarily raise[s] a stated federal issue, [that is] actually disputed and substantial . . . ." Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  "[F]ederal law [must do] . . . more than just shape a court's interpretation of state law; the federal law must be at issue" in the plaintiff's claim. Int'l Union of Operating Eng'rs v. County of Plumas, 559 F.3d 1041, 1045 (9th Cir. 2009) (emphasis in

1   original).  Further, "[w]hen a claim can be supported by alternative
2   and independent theories-one of which is a state law theory and one of
3   which is a federal law theory-federal question jurisdiction does not
4   attach because federal law is not a necessary element of the claim."
5   Rains v. Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996).

6          A state law claim may also "arise under" federal law "where
7   federal law completely preempts state law."  ARCO Envtl. Remediation,
8   L.L.C v. Dept. of Health and Envtl. Quality, 213 F.3d 1108, 1114 (9th
9   Cir. 2000).  "In such circumstances, federal law displaces plaintiff's
10  state-law claim, no matter how carefully pleaded.  This is because the
11  claim purportedly based on a preempted state law is considered, from
12  its inception, a federal claim, and therefore arises under federal
13  law."  Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005)
14  (quotations and citations omitted).  However, "[p]reempted state law
15  claims may be removed to federal court only in the rare instances
16  where Congress has chosen to regulate the entire field . . . ."  Id.
17  "The [complete preemption] doctrine applies in select cases where the
18  preemptive force of federal law is so 'extraordinary' that it converts
19  state common law claims into claims arising under federal law for
20  purposes of jurisdiction."  Holman v. Laulo-Rowe Agency, 994 F.2d 666,
21  668 (9th Cir. 1993) (citation omitted).  The "dispositive question" is
22  whether a federal law provides "the exclusive cause of action" for the
23  state claim alleged.  Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 9,
24  (2003).  If the answer is yes, "the cause of action necessarily arises
25  under federal law and the case is removable."  Id.  However, "[b]y
26  drafting a purely state law complaint, the plaintiff will ordinarily
27  remain in state court."   Holman, 994 at 668.
28  //

### III.   DISCUSSION

Plaintiffs argue this action should be remanded to state court since Plaintiffs' state law claims do not involve the determination of a substantial, disputed question of federal law, nor is federal law necessary to sustain any of their claims.  BofA responds, arguing federal question jurisdiction exists since Plaintiffs' deceit and breach of the implied covenant of good faith and fair dealing claims are completely preempted by the National Banking Act and regulations promulgated thereunder, and Plaintiffs' claim for violation of California Business and Professions Code section 17200 necessarily requires a determination that a federal law was violated.

**A. Preemption of Plaintiffs' Deceit and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims**

**1.  Plaintiffs' Deceit Claim**

BofA argues Plaintiffs' deceit claim premised upon Defendants' failure to disclose a yield spread premium is "completely preempted" by the National Banking Act ("NBA") and regulations promulgated by the Office of the Comptroller of the Currency ("OCC"). Specifically, BofA contends OCC regulation 12 C.F.R. § 34.4(a)(9) preempts Plaintiffs' deceit claim.

BofA, however, narrowly characterizes the scope of Plaintiffs' claim.  Plaintiffs' deceit claim is not premised solely on BofA's failure to "disclose a yield spread premium."[2]  Rather,

___

[2]   Plaintiffs' deceit claim is alleged under California Civil Code sections 1709 and 1710, which provide that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709.  Section 1710 defines "deceit" for the purposes
(continued...)

Plaintiffs allege more broadly that "Defendants made misrepresentations . . . including but not limited to statements that Defendants would act in Plaintiffs' best interest to obtain a loan which would be to Plaintiffs' benefit and to obtain a loan with the best possible terms for Plaintiffs.  In fact, Defendants did not obtain a loan which was to Plaintiffs' benefit and in fact induced Plaintiffs to accept a loan on worse terms and with a higher interest rate than they could have otherwise obtained so that Defendants could receive a 'yield spread premium' kickback."  (Compl. ¶ 60.)  Plaintiffs also allege "Defendants misrepresented the amount that Defendants were charging Plaintiffs for their services" and "Defendants stated to Plaintiffs that the cost of the loan brokerage service they provided to Plaintiffs would be minimal."  (Id. ¶¶ 61, 63.)  Plaintiffs further allege "Defendants suppressed the fact that the yield spread premium was a kickback payment and that ultimately Plaintiffs would end up paying for the improper kickback through higher interest rates, other loan fees and generally less favorable loan terms."  (Id. ¶ 62.)  Plaintiffs allege, as a result of these allegedly "misleading acts and statements," Defendants "in fact did mislead Plaintiffs and proximately damaged Plaintiffs by causing them to pay more for products (the loan) and services (mortgage brokerage) than the amount originally purported to be the price of these products and services."  (Id. ¶ 68.)

Only Plaintiffs' allegation that "Defendants suppressed the fact that the yield spread premium was a kickback payment" arguably is premised upon any failure to disclose a "yield spread premium."  (Id.

---

[2](...continued)
of section 1709.  Cal. Civ. Code § 1710.

¶ 62.)  Even if a deceit claim premised upon a failure to disclose a yield spread premium would be preempted by the NBA, Plaintiffs' deceit claim here can be maintained on alternative and independent state law grounds.  See Rains, 80 F.3d at 346 (stating that "[w]hen a claim can be supported by alternative and independent theories . . . federal question jurisdiction does not attach because federal law is not a necessary element of the claim").  Therefore, Plaintiffs' deceit claim does not "arise under" federal law and does not provide a basis for removal.

## 2. Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

BofA also argues Plaintiffs' breach of the implied covenant of good faith and fair dealing claim is preempted by the NBA and OCC regulations since 12 C.F.R. § 34.4(a)(4) and (9) preempt "any state law claim related to alleged non-disclosures."  Further, BofA argues that Plaintiffs' allegation that "defendants placed [P]laintiffs in a usurious transaction is also completely preempted" since the "NBA provides the exclusive remedy for a claim of usury."

Plaintiffs allege that "at all times there existed an implied covenant of good faith and fair dealing represented by the terms of the loan, Note, and Deed of Trust which imposed upon Defendants a duty of good faith and fair dealing . . . to safeguard, protect, or otherwise care for the assets and rights of Plaintiffs." (Compl. ¶ 51.)  Further, Plaintiffs allege:

> Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when Defendants:
>     (a)  Failed to provide all the proper disclosures;

(b) Failed to provide documentation of the loan or respond to Plaintiffs' inquiries[;]
(c) Failed to provide accurate lending disclosures on the loan;
(d) Attempted and did place Plaintiffs into usurious transactions that any reasonable mortgage broker or mortgage lender would know would ruin Plaintiffs financially, or attempted to profit from servicing these loans when it was obvious that they were entirely illegitimate[; and]
(e) Attempt[ed] to collect payments on the loan without documenting their position regarding the Deed of Trust[.]

(Id. ¶ 53.)  In addition, Plaintiffs allege that "reporting payment arrearages to credit agencies and refusing to respond to Plaintiffs' inquiries and refusing to produce documentation of the loan constitutes a breach of the covenant."  (Id. ¶ 54.)

Plaintiffs' breach of the implied covenant of good faith and fair dealing claim, therefore, is broader than BofA's characterization.  This claim does not rest solely on allegations of non-disclosure or usury, and therefore, independent and alternative state law theories support Plaintiffs' claim.  See Rains, 80 F.3d at 346.

Further, BofA has not demonstrated that Plaintiffs' claim is preempted by the NBA or OCC regulations promulgated thereunder.  While the NBA "shields national bank[s] from unduly burdensome and duplicative state regulation," federally chartered banks remain "subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purpose of the NBA."[3]  Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11

---

[3]    It is undisputed that BofA is a national banking association and is subject to the NBA and OCC regulations promulgated thereunder.

1 (2007).  Therefore, "[s]tates are permitted to regulate the activities

2 of national banks where doing so does not prevent or significantly

3 interfere with the national bank's . . . exercise of its powers."  Id.

4 at 12.  "Thus, [under the NBA,] states retain some power to regulate

5 national banks in areas such as contracts, debt collection,

6 acquisition and transfer of property, and taxation, zoning, criminal

7 and tort law."  Bank of America v. City and County of San Francisco,

8 309 F.3d 551, 559 (9th Cir. 2002).

9          OCC regulations prescribe the preemptive reach of the NBA.

10 See 12 C.F.R. § 34.4 (identifying preempted state laws).  In pertinent

11 part, 12 C.F.R. § 34.4 provides:

12                    (a) Except where made applicable by Federal
                     law, state laws that obstruct, impair, or
13                    condition a national bank's ability to fully
                     exercise its Federally authorized real estate
14                    lending powers do not apply to national
                     banks.  Specifically, a national bank may
15                    make real estate loans . . . without regard
                     to state law limitations concerning: . . .
16                         (4) The terms of credit, including
                          schedule for repayment of principal
17                        interest, amortization of loans,
                          balance, payments due, minimum payments,
18                        or term to maturity of the loan,
                          including the circumstances under which
19                        a loan may be called due and payable
                          upon passage of time or a specified
20                        event external to the loan; . . .
                          (9) Disclosure and advertising,
21                        including laws requiring specific
                          statements, information, or other
22                        content to be included in credit
                          application forms, credit solicitations,
23                        billing statements, credit contracts, or
                          other credit-related documents;
24                        (10) Processing, origination, servicing,
                          sale or purchase of, or investment or
25                        participation in, mortgages.
                     (b) State laws on the following subjects are
26                   not inconsistent with the real estate lending
                     powers of national banks and apply to
27                   national banks to the extent that they only
                     incidentally affect the exercise of national
28                   banks' real estate lending powers:

```
                         (1) Contracts;
                         (2) Torts; . . .
                         (5) Rights to collect debts; . . .
                         (9) Any other law the effect of which
                         the OCC determines to be incidental to
                         the real estate lending operations of
                         national banks or otherwise consistent
                         with the powers and purposes set out in
                         § 34.3(a).
```

12 C.F.R. § 34.4.  "Federal regulations have no less pre-emptive

effect than federal statutes."  Bank of America, 309 F.3d at 560

(quoting Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S.

141, 153 (1982)).  Further, "the usual presumption against federal

preemption of state law is inapplicable to federal banking

regulation."  Rose v. Chase Bank USA, N.A., 513 F.3d 1032, 1037 (9th

Cir. 2008) (quoting Wells Fargo Bank, N.A. v. Boutris, 418 F.3d 949,

956 (9th Cir. 2005)).

     BofA argues that Plaintiffs' claim is "completely preempted"

by 12 C.F.R. § 34.4(a)(4) and (9) which provide that national banks

may make real estate loans without regard to state law limitations

regarding the "terms of credit" and "disclosure and advertising."

However, a claim for breach of the implied covenant of good faith and

fair dealing is not a "state law limitation concerning" "[t]he terms

of credit" or the "disclosure and advertising" of real estate loans.

Rather, it is common law claim of "general applicability" that does

not directly target banks or lending activity.  Cf. Jefferson v. Chase

Home Finance, No. C 06-6510 TEH, 2008 WL 1883484, at *10 (N.D. Cal.

Apr. 29, 2008) (finding that California's Consumer Legal Remedies Act,

the False Advertising Act and the Unfair Competition Act are "laws of

general application, which merely require all businesses (including

banks) to refrain from misrepresentations and abide by contracts and

representations to customers" and therefore "do not fall into the
enumerated categories of § 34.4(a)") (quotations omitted)).
Therefore, 12 C.F.R. § 34.4(a) is inapplicable and the preemption
principles articulated in 12 C.F.R. § 34.4(b) control instead.  See
Fultz v. World Sav. and Loan Ass'n, No. C08-0343RSL, at *2 (W.D. Wash.
Aug. 18, 2008) (concluding that the state laws under which plaintiffs
brought their claims were not "directly aimed at national banks or
lenders" and therefore did not fall within 12 C.F.R. § 34.4(a) and the
pertinent inquiry required looking to 12 C.F.R. § 34.4(b)).  Under 12
C.F.R. § 34.4(b), state contract and tort laws are only preempted to
the extent that they more than "incidentally affect the exercise of
[a] national bank's real estate lending powers."

        BofA's preemption argument is conclusory.  BofA merely
states that Plaintiffs' claim is "completely preempte[d]" and cites 12
C.F.R. § 34.4(a)(4) and (9).  BofA, however, does not address
preemption under § 34.4(b), nor has it shown that Plaintiffs' claim
for breach of the implied covenant of good faith and fair dealing does
more than "incidentally affect" BofA's "real estate lending powers."
Given that state contract and tort laws are generally "not
inconsistent with the real estate lending powers of national banks and
apply to national banks," BofA has not demonstrated that Plaintiffs'
claim is preempted.

        BofA also argues Plaintiffs' allegation that the defendants
"attempted and did place Plaintiffs into usurious transactions" is
preempted by sections 85 and 86 of the NBA.  While the NBA preempts
any state law claim of usury alleged against a national bank, BofA has
not demonstrated that Plaintiffs are alleging a usury claim.

        Plaintiffs' complaint alleges that defendants breached their

12

1 implied covenant of good faith and fair dealing with Plaintiffs when
2 they "[a]ttempted and did place Plaintiff into usurious transactions
3 that any reasonable mortgage broker . . . would know would ruin
4 Plaintiffs financially . . . ."  (Compl. ¶ 53.)  Plaintiffs,
5 therefore, are not seeking to recover because BofA applied an interest
6 rate that exceed any statutory maximum.  Rather, Plaintiffs'
7 allegation is that Defendants breached an implied covenant by placing
8 them into a financially ruinous transaction.  <u>Cf.</u> <u>Cross-Country Bank</u>
9 <u>v. Klussman</u>, No. C-01-4190-SC, 2004 WL 966289, at *5 (N.D. Cal. Apr.
10 30, 2004) (rejecting preemption argument where defendant improperly
11 characterized plaintiff's allegations as a usury claim).  Accordingly,
12 BofA has not demonstrated that Plaintiffs are alleging a usury claim
13 that is preempted by the NBA.

14        Since BofA has not shown that Plaintiffs' breach of the
15 implied covenant of good faith and fair dealing claim is preempted by
16 the NBA or OCC regulations, this claim does not provide a basis for
17 removal.

18 **B.    Plaintiffs' UCL Claim for "Unlawful" Business Acts or Practices**

19        BofA also argues Plaintiffs' claim alleging "unlawful"
20 conduct under California Business and Professions Code Section 17200
21 et seq. ("UCL") gives rise to federal question jurisdiction since it
22 requires a determination of whether there has been a violation of the
23 federal Truth in Lending Act ("TILA").

24        "To bring a UCL claim, a plaintiff must show either an (1)
25 unlawful, unfair or fraudulent business act or practice, or (2)
26 unfair, deceptive, untrue or misleading advertising.  Because section
27 17200 is written in the disjunctive, it establishes three varieties of
28 unfair competition - acts or practices which are unlawful, or unfair

or fraudulent.  A practice is prohibited as unfair or deceptive even if not unlawful or vice versa." <u>Lippitt v. Raymond James Fin. Servs. Inc.</u>, 340 F.3d 1033, 1043 (9th Cir. 2003) (quotations and citations omitted).

Plaintiffs allege in their complaint that defendants' conduct "constitute[s] unlawful business acts and/or practices," and "threatens an incipient violation of various consumer protection statutes, or which violate the policy or spirit of such laws, including but not limited to, California Business and Professions Code [section] 10130, California Civil Code [sections] 1709, 1710, 1711, 1920 and 1921 and Section 1639 of Title 15 of the United States Codes, together with Regulation Z, 12 C.F.R. 226.1."  (Compl. ¶ 75.)

BofA argues that neither California Business and Professions Code section 10130 nor California Civil Code section 1770 are applicable to Plaintiffs' claim against it, and that California Civil Code sections 1920 and 1921 are preempted by the federal Alternative Mortgage Transactions Parity Act.  BofA concludes that "other than [the] completely preempted 'deceit' claim . . . the only viable remaining alleged violation of law supporting liability under [S]ection 17200 . . . is the averred violation of TILA and Regulation Z."

However, as discussed above, Plaintiffs' deceit claim alleged under California Civil Code sections 1709 and 1710, is not preempted by federal law.  Therefore, BofA has not shown that Plaintiffs' reference to federal law in their UCL claim "does more than just shape [the] court's interpretation of state law . . . ." <u>Int'l Union of Operating Eng'rs</u>, 559 F.3d at 1045.  Plaintiffs' "allegation that [BofA] has violated the TILA . . . is but one of

[many] predicate violations . . . on which [Plaintiffs'] base[] [their] Section 17200 cause of action. . . .  The TILA violation predicate, therefore, is not, and cannot be characterized as, an essential part of the cause of action." California v. H & R Block, Inc., No. C 06-2058 SC, 2006 WL 2669045, at *4 (N.D. Cal. Sept. 18, 2006).  Accordingly, "[t]here is no 'basic' or 'pivotal' federal question that impinges on [Plaintiffs'] right to relief." Lippitt, 340 F.3d at 1046.  Therefore, Plaintiffs' UCL claim does not require a determination of federal law and is not a basis for federal question jurisdiction.

BofA, therefore, has not demonstrated the existence of federal question jurisdiction supporting removal of this action to federal court.  This action is accordingly remanded to the San Joaquin County Superior Court in California from which it was removed.

### C.  Plaintiffs' Request for Attorney's Fees and Costs

Plaintiffs also argue they are entitled to attorney's fees and costs incurred in their remand motion.  BofA responds, arguing since Plaintiffs "have made no showing that removal was objectively unreasonable" they are not entitled to recover fees and costs.

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "[T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, where an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) (citations

omitted).  Although BofA's arguments were ultimately found to lack

merit, Plaintiffs have not demonstrated that BofA's contentions were

objectively unreasonable.  <u>See</u> <u>Gardner v. UICI</u>, 508 F.3d 559, 562 (9th

Cir. 2007) (stating that "whether removal is improper is not

dispositive in determining whether fees should be awarded").

Therefore, Plaintiffs' request for attorney's fees and costs is

denied.

## IV.   CONCLUSION

         For the stated reasons, Plaintiffs' motion is granted and

this case is remanded to the San Joaquin County Superior Court in

California from which it was removed.  However, Plaintiffs' request

for attorney's fees and costs under 28 U.S.C. § 1447(c) is denied.

Dated:  February 10, 2010

                              _____
                              GARLAND E. BURRELL, JR.
                              United States District Judge